IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff–Appellee, | ) ) ) | Case No. 7:15–cr–00060 |
| v. | ) ) | By: Elizabeth K. Dillon |
| JOSEPH A. DAILEY, | ) ) | United States District Judge |
| Defendant–Appellant. | ) ) | |

### AMENDED MEMORANDUM OPINION*

Defendant Joseph A. Dailey was convicted by a magistrate judge of two reckless-driving offenses. The magistrate judge found that the first occurred on or about June 28, 2014, and that the second occurred on August 15, 2014. Dailey now appeals his conviction for the first offense, arguing that it cannot stand because there was a fatal variance between the offense date alleged in the violation notice and the offense date established by the evidence, and because the evidence was insufficient to show that he was driving 20 miles per hour over the speed limit. For the reasons below, the court rejects his arguments and will affirm his conviction.

### I. BACKGROUND

**A. Dailey is charged with speeding and reckless driving.**

At approximately 8:11 p.m. on August 15, 2014, Blue Ridge Parkway Ranger James Lyon clocked Dailey going 102 miles per hour in a 45-mile-per-hour zone near milepost 136 on the Parkway. (Dkt. No. 4, Trial Tr. at 10–11, June 10, 2015.) Dailey was driving a 2009 white Yamaha R6 motorcycle. (Dkt. No. 4 at 11, 21–22; Gov't Ex. 6, photograph. *See also* Case No. 7:14–po–00159, Dkt. No. 1, Violation Notice 1.) Lyon stopped Dailey and charged him with

---

* The original Memorandum Opinion contained two incorrect dates on page 11. This amended version simply corrects the typographical error in those two dates.

two offenses—speeding, in violation of 36 C.F.R. § 4.21(c); and reckless driving, in violation of 36 C.F.R. § 4.2(b) (assimilating Va. Code Ann. § 46.2–862). The reckless-driving charge was for driving 20 mph or more over the speed limit.

## B. Dailey is charged again with reckless driving.

Sometime after August 15, 2014, while searching YouTube, Lyon found a video titled "R6 – Fun up Bent Mountain," with the following description: "An R6 riding around Roanoke County. Last Clip is showing the mileage, 12,000 even." (Dkt. No. 4 at 12–13; Gov't Ex. 1, screenshot; Gov't Ex. 3, video.) The video had been posted on June 28, 2014, to a YouTube channel named "Burito [sic] Smuggler," which was linked to Dailey's Google Plus account. (Dkt. No. 4 at 13; Ex. 1.)

Shot from the driver's perspective, the video depicts a motorcycle identical to the one Dailey was driving on August 15, 2014, traveling at a high rate of speed between mileposts 135 and 136 on the Parkway. (Dkt. No. 4 at 12, 16.) The motorcycle's instruments are visible. (*Id.* at 17; Ex. 3.) At roughly the two-and-a-half-minute mark, the driver very quickly passes an SUV on a straight stretch of road. (Dkt. No. 4 at 17; Ex. 3.) The motorcycle's engine appears to shift gears in rapid succession, with the tachometer gauge several times reaching close to or in the gauge's red zone.[1] The speedometer flashes "143, 144, 145 . . ." miles per hour. (*Id.*) The driver continues to accelerate for a few more seconds until the speedometer reaches "150." (Dkt. No. 4 at 17; Ex. 3.) The driver then decelerates. Shortly afterward, the video jumps to a separate clip showing a close-up of the motorcycle's odometer. (Dkt. No. 4 at 17; Ex. 3.) It reads "12,000." (Dkt. No. 4 at 17; Ex. 3.)

---

[1] The tachometer in the video displays revolutions per minute from 0 to 19,000. The red zone begins at 16,500.

Lyon downloaded the video and, later, called Dailey. (Dkt. No. 4 at 15.) Dailey did not answer, so Lyon left him a message, explaining that he needed to give him some paperwork. (*Id.*) Later that night, around 10 or 11 p.m., Dailey returned the call. (*Id.*) He told Lyon that he could not sleep and that he needed to know what was going on. (*Id.*) Lyon did not want to discuss the situation at that time, so he told Dailey that they would talk about it in the morning. (*Id.*) When Dailey called back in the morning, Lyon told him that he had found the video and that they needed to meet. (*Id.*) Immediately after the call, the video was removed from YouTube. (*Id.*)

On August 24, 2014, Lyon met Dailey at his residence and asked him about the video. (*Id.* at 18, 28.) Dailey admitted that the motorcycle in the video was his and that he was the one driving it at the time. (*Id.* at 18–19.) He could not remember when the video was taken, but thought that it was two years old. (*Id.* at 19.)

Based on the video and Dailey's admissions, Lyon charged Dailey with a second reckless-driving offense for driving 20 mph or more in excess of the speed limit on the Parkway. (*Id.* at 28; Dkt. No. 1.) The offense date on the notice of violation is June 28, 2014, which is the date the video was uploaded to YouTube. (Dkt. No. 1.)

During the same meeting with Dailey, Lyon asked Dailey where the motorcycle was, and Dailey said that he had traded it in a few days earlier. (Dkt. No. 4 at 15.) Lyon tracked the motorcycle to a local dealership, Star City Motorsports. (*Id.*) On August 26, 2014, he went to the dealership and took several photographs of the motorcycle. (*Id.* at 19–24; Gov't Exs. 4–7, photographs.) Three of them show the odometer, which reads "14,231." (Dkt. No. 4 at 20; Exs. 4–5.) Two others show a sticker that reads "Zero Gravity" on the windshield. (Dkt. No. 4 at 22–23; Exs. 6–7.) Lyon saw the same sticker when he pulled Dailey over on August 15, 2014. (Dkt.

No. 4 at 22; Ex. 3.) It is also visible on the video. (Dkt. No. 4 at 22; Ex. 3.)

### C. Dailey is convicted of both reckless-driving offenses.

On June 10, 2015, Dailey appeared before Magistrate Judge Robert S. Ballou on all charges. (Dkt. No. 4 at 1–2.) As for the August 15, 2014 charges, Dailey pleaded guilty to the reckless-driving charge, and the government agreed to dismiss the speeding charge. (*Id.* at 6–8.) The magistrate judge accepted Dailey's plea and found him guilty of reckless driving on August 15, 2014. (*Id.* at 6, 48, 71.) The magistrate judge also dismissed the speeding charge. (*Id.* at 48.)

With respect to the June 28, 2014 reckless-driving charge, Dailey pleaded not guilty, and the case proceeded to trial. (*Id.* at 6.) The government called one witness—Lyon. (*Id.* at 10.) He first recounted the events of August 15, 2014, and his subsequent investigation, including the discovery of the video on YouTube. (*Id.* at 10–24.) Without objection, the government played the video for the magistrate judge. (*Id.* at 16.) Lyon then explained that the video depicts a motorcycle going "basically from a stop . . . all of the way up to 150 miles an hour" and passing an SUV between mileposts 135 and 136 on the Parkway—the same location where he had stopped Dailey on August 15, 2014, for going 102 mph. (*Id.* at 16–17, 28.) Lyon further testified that in the part of the video showing the pass, the motorcycle's odometer reads "11,983," and that, in a different clip that is part of the same uploaded video, the odometer shows "12,000." (*Id.* at 17.)

Lyon next testified about the similarities between the motorcycle in the video and the motorcycle Dailey was driving on August 15, 2014, including the "Zero Gravity" sticker. (*Id.* at 17–18.) Lyon then explained that, upon being confronted, Dailey admitted that the video was of him and that he was driving the same motorcycle that he was driving on August 15, 2014. (*Id.* at

18–19.) Lyon further testified that Dailey said he had sold the motorcycle before they talked. Lyon located it at Star City Motorsports and took pictures of it two days later, on August 26, 2014. (*Id.* at 19–24.) Lyon also testified that some of pictures show the motorcycle's odometer, and it reads "14,231." (*Id.* at 20.)

Lyon then testified that he knew that the video was shot after September 2013 for two reasons. (*Id.* at 24–27.) The first was "the trees and the foliage [as] compared to the grass in the field." (*Id.* at 24.) The fields along the Parkway "have to . . . or at least they are supposed to be" cut before July 4, he explained, and the video depicts a field with grass that is much shorter than the grass on the side of the road. (*Id.*) "So," he testified, based on his 10 year of farming experience, "the first cutting has been cut already and now the grass has grown back up for at least a second cutting." (*Id.* at 25.)

The second was the signage on the road. (*Id.* at 25.) Lyon testified that "[a]t the end of the video there is a sign" that reads "'Road Closed,'" and it has "a light beacon on top." (*Id.* at 25.) A prior sign at the same location said "'Closed' – or 'Avoid Parkway during snow, sleet, rain, fog,'" he explained. (*Id.*) Although he did not know "exactly" when the old sign was replaced with the one in the video, he believed that it had happened sometime between September and December 2013. (*Id.* at 26.)

On cross-examination, Lyon conceded that he was not present when the signage was changed on the Parkway, that consequently he "really [did not] know when exactly the sign [in the video] was installed[,]" and that it could have been installed as early as August 15, 2013. (*Id.* at 29.) He also admitted that "there's nothing on the video that indicates when the occurrence actually happened." (*Id.* at 32.) And when asked whether he "assumed that the date that the video was posted [June 28, 2014] was the same date that the event occurred," he responded, "that

5

would be correct." (*Id.*) He went on to explain, though, that "[b]ased on the scenery and the signage that's there, I think that would correlate with the correct date of June 28th." (*Id.*)

Lyon was also asked on cross whether he knew if "the speedometer on the motorcycle depicted in the video . . . was properly calibrated and accurately reflected the speed at which the motorcycle was going." (*Id.* at 29.) He replied that, "[b]ased on [his] training and experience of speed . . . , yes, that that speed correlates with [his] visual estimate of speed." (*Id.*) He explained that he could base the motorcycle's speed on its "forward progression from almost a stopping standpoint up until [its] speed," and on "the vehicle's speed that [the motorcycle] passed." (*Id.* at 30.) And while he could not "pinpoint the exact 150 miles an hour," he could determine that the motorcycle was going "over a hundred miles an hour." (*Id.* at 30–31.) He conceded, however, that he had never been tested on his ability to estimate speed based on his watching a video. (*Id.* at 31.)

On redirect, Lyon testified that the posted speed limit in the area where the video was shot is 45 mph. (*Id.* at 33.) He also confirmed that, based on the video, he believes that the motorcycle was going at least 100 mph and that he thus had "a 35-, 40-mile leeway" in charging Dailey with reckless driving for driving 20 mph or more over the speed limit. (*Id.*)

Through Lyon, the government moved in to evidence eight exhibits, all of which were admitted without objection. (*Id.* at 12–24.) In addition to the video and photographs of the motorcycle, the government introduced two screenshots. The first is from YouTube, and it depicts the video. (*Id.* at 12–13; Ex. 1.) The second is from Dailey's Facebook page, and it shows a photograph of a motorcycle that appears to be the one that Dailey was driving on August 15, 2014. (Dkt. No. 4 at 14; Gov't Ex. 2, screenshot.) Like the video, the photograph was posted on June 28, 2014. (Dkt. No. 4 at 14, Ex. 2.)

6

After Lyon's testimony, the government rested its case, and Dailey moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. (Dkt. No. 1 at 37–43.) He argued that the government had failed to prove that the offense had occurred on or about June 28, 2014. (*Id.* at 37–40.) The magistrate judge denied the motion, concluding that the government had produced sufficient evidence to go forward. (*Id.* at 43.) Dailey then rested without putting on any evidence. (*Id.*)

Following closing arguments, the magistrate judge found Dailey guilty of reckless driving on or about June 28, 2014. (*Id.* at 50.) The magistrate judge first concluded that the evidence was sufficient to establish the date of the offense. (*Id.* at 50.) He explained that the growth of the foliage and the length of the grass depicted in the video, combined with the timing of the change of the Parkway's signage, the date of the video's publication, and the increase in the motorcycle's mileage, supported a June 2014 timeframe. (*Id.*)

The magistrate judge then determined that the evidence was sufficient to prove that Dailey was driving 20 mph or more in excess of the speed limit. (*Id.* at 50–51.) The magistrate judge reached this conclusion based "upon the video evidence as to the speed [of the motorcycle] and the estimates of the speed . . . as well as [his] own ability to observe the video." (*Id.* at 50.) From "the rate at which [the motorcycle] passed stationary objects as well as passing moving vehicles"—which he made "the natural assumption [were] traveling at or near the posted speed limit of 45"—he reasoned that Dailey had to have been "going at least 65 miles an hour or more, sufficient to find [him] guilty of reckless driving." (*Id.* at 50–51.)

The magistrate judge sentenced Dailey to 45 days' imprisonment for each reckless-driving offense, to run concurrently, and imposed a $10 assessment for each offense. (*Id.* at 72.)

The magistrate judge also placed Dailey on two years' probation, with several conditions, including the suspension of his driver's license. (*Id.* at 72–73.)

Dailey now appeals his conviction for reckless driving on or about June 28, 2014.[2]

## II. STANDARDS OF REVIEW

"An appellate review conducted by a district court after a bench trial before a magistrate judge is not a trial de novo; rather, the district court utilizes the same standards of review applied by a court of appeals in assessing a district court conviction." *United States v. Bursey*, 416 F.3d 301, 305 (4th Cir. 2005); *see also* Fed. R. Crim. P. 58(g)(2)(D). A district court accordingly reviews a magistrate judge's factual findings for clear error and his legal conclusions de novo. *Bursey*, 416 at 306.

## III. DISCUSSION

Dailey raises two issues on appeal: whether there was a fatal variance between the offense date alleged in the violation notice and the offense date established by the evidence, and whether the evidence was sufficient to prove that he was driving 20 mph over the speed limit. (Dkt. No. 9, Appellant's Br. 1.) The court addresses each in turn.

### A. Fatal Variance

Dailey first argues that there was a fatal variance between the offense date alleged in the violation notice and the offense date established by the evidence. (*Id.* at 6–10.) He submits that, while the violation notice alleged that he drove recklessly on June 28, 2014, the government's evidence did not prove that the offense actually occurred on that or any other date certain. (*Id.* at 8.) Instead, he continues, the evidence showed only that the offense occurred "sometime when

---

[2] Dailey also noted an appeal to his conviction for reckless driving on August 15, 2014. But he stated at the hearing and in his brief that he "is not appealing that conviction nor the associated sentence." (Dkt. No. 9, Appellant's Br. 2 n.1.) The court thus considers the appeal abandoned.

the grass was cut and the leaves were on the trees—perhaps around June 28, 2014." (*Id.* at 6 (emphasis deleted).)

He further maintains that this variance between the violation notice and the evidence was prejudicial to his defense. (*Id.* at 9.) He came to court ready to defend against the allegation that he committed the offense on June 28, 2014, "but ended up confronting evidence that he committed [the offense] on some other unspecified date." (*Id.*) Given this alleged prejudice, he contends that the variance was fatal and that consequently his conviction should be reversed. (*Id.* at 10.)[3] The court disagrees.

"When the government, through its presentation of evidence or its argument, . . . broadens the bases for conviction beyond those charged in the indictment, a constructive amendment—sometimes referred to as a fatal variance—occurs." *United States v. Randall*, 171 F.3d 195, 204 (4th Cir. 1999). A fatal variance violates a defendant's Fifth Amendment guarantee to be indicted by a grand jury and is *per se* error. *Id.*[4]

But not every divergence between the indictment and the evidence results in a fatal variance. *United States v. Allmendinger*, 706 F.3d 330, 339 (4th Cir. 2013). The key is whether the evidence introduced "change[s] the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment." *Randall*, 171 F.3d at 203 (quoting *United States v. Schnabel*, 939 F.2d 197, 203 (4th Cir. 1991)). When the evidence "does not change the crime charged in the indictment, a mere variance occurs." *Id.* Put differently, "[w]here the evidence at trial proves facts materially different from those in the

---

[3] Below, Dailey also contended that the variance raised a statute-of-limitations issue. (Dkt. No. 4, Trial Tr. 37–39, June 10, 2015.) But he has not advanced that argument on appeal, except to mention it in his reply brief without any argument.

[4] Here, Dailey was charged with a petty offense by a violation notice, not an indictment. Though the trial of such an offense may proceed on an indictment, a defendant has no constitutional right to one. Fed. R. Crim. P. 58(b)(1). The court nevertheless assumes for purposes of this case that the variance doctrine applies equally to a violation notice as it does to an indictment, for both are charging documents. *See id.*

indictment, '[c]onvictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment.'" *United States v. Mehta*, 594 F.3d 277, 280 (4th Cir. 2010) (quoting *United States v. Miller*, 471 U.S. 130, 136 (1985)).

The variance here was not fatal because it did not change the elements of the charged offense. To prove that Dailey was guilty of reckless driving, the government needed to show that he drove a motor vehicle on the Parkway "at a speed of twenty miles per hour or more in excess of the applicable maximum speed limit." Va. Code Ann. § 46.2–862. It did not, however, need to establish when he did so. *See id.*

"Where a particular date is not a substantive element of the crime charged, strict chronological specificity or accuracy is not required." *United States v. Kimberlin*, 18 F.3d 1156, 1159 (4th Cir. 1994) (quoting *United States v. Morris*, 700 F.2d 427, 429 (1st Cir. 1983)); Moreover, "[t]here is no requirement that the government prove that an alleged crime occurred on the exact dates alleged in the charging instrument. Rather, it is sufficient if the government only shows that it occurred reasonably near the date stated in the indictment." *United States v. Hayes*, No. 2:06–cr–00010, 2007 U.S. Dist. LEXIS 40191, at *12 (W.D. Va. June 3, 2007).

In this case, the government's evidence was sufficient to establish that the offense charged occurred on a date reasonably near June 28, 2014. It showed that the growth of the foliage, the length of the grass, the signage on the Parkway, and the mileage on the motorcycle depicted in the video were consistent with a June 2014 timeframe. It further established that the video was posted on June 28, 2014, and that, on the same day, Dailey posted a photograph of a motorcycle that appears to be the same as the one in the video to his Facebook page. Based on

10

this evidence, a reasonable finder of fact could determine beyond a reasonable doubt that the offense occurred on a date reasonably near June 28, 2014.

Having determined that the variance here was not fatal, the court must still determine whether the difference between the date of the offense alleged in the violation notice (June 28, 2014) and the date proved at trial (reasonably near to June 28, 2014) requires reversal. A variance that is not fatal "does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense." *Randall*, 171 F.3d at 203; *Mehta*, 594 F.3d at 281. To obtain a reversal or dismissal of charges, the variance must have "affected the substantial rights of the defendant and thereby resulted in actual prejudice." *Mehta*, 594 F.3d at 280 (citing *United States v. Kennedy*, 32 F.3d 876, 883 (4th Cir. 1994)).

While Dailey asserts that the variance prejudiced him, there is no evidence to support his claim. Moreover, Dailey has not identified any specific prejudice nor, for example, any evidence he would have otherwise presented in his defense. *See, e.g., Mehta*, 594 F.3d at 281 (affirming wire fraud convictions where indictment charged that certain fraudulent transactions came from "BankOne in Belleville, Michigan," but the government proved the transfers were processed through Drake Software in North Carolina because "[t]here is nothing in the record that indicates that [the defendant] would have prepared differently for his defense if the indictment had charged that the wire communication originated in a different place"); *United States v. Covington*, 411 F.2d 1087 (4th Cir. 1969) (holding that where the indictment alleged the crime occurred on or about December 27, 1966, and all trial evidence showed it occurred during the first week of July 1966, the variance was not fatal, and reversal was not required due to lack of prejudice). In particular, there is no evidence that the violation notice's use of a specific date, as

opposed to an approximate date, surprised Dailey or hindered the preparation of his defense. On the contrary, the record reflects that Dailey was fully apprised of the charge against him, that he knew it was based on the video, and that he was prepared to defend against it. (*See* Dkt. No.4 at 14–15.)

The variance also does not expose Dailey to the threat of a second prosecution for the same offense. As just explained, the government's evidence was sufficient to establish that the offense occurred on a date reasonably near June 28, 2014. It was also sufficient to show the particulars of the offense, such as the location, type of motor vehicle, and approximate speed. Accordingly, "the record depicts the offense[] in such unique detail that [Dailey] is protected from subsequent prosecutions for the same crime[]." *United States v. Quicksey*, 525 F.2d 337, 341 (4th Cir. 1975).

Because the date alleged in the violation notice was not a substantive element of the offense charged, and because Dailey was not actually prejudiced by the presentation at trial of a range of possible dates different than the precise date in the notice of violation, the court concludes that his challenge to his conviction based on variance grounds must fail.

## B. Sufficiency of the Evidence

Dailey also contends that the evidence was insufficient to establish that he was driving 20 mph or more over the speed limit. (Dkt. No. 9 at 10–13.) First, he submits, there was no reliable scientific measurement of the motorcycle's speed. Lyon did not use a properly calibrated radar gun, Dailey points out, and there was no evidence that the motorcycle's speedometer was accurate. (*Id.* at 10–11.) Dailey further argues that Lyon's estimation that the motorcycle was going more than 100 mph was also unreliable, because Lyon did not personally observe the motorcycle, and because Lyon did not have any training in estimating speed based on a video.

12
Case 7:15-cr-00060-EKD   Document 16   Filed 07/24/15   Page 12 of 15   Pageid#: 172

(*Id.* at 11.) Lastly, Dailey maintains that the magistrate judge improperly relied on his own opinion, formed after watching the video, that Dailey was going at least 65 mph. (*Id.* at 12.) In Dailey's view, the magistrate judge "should not have considered this new evidence, as Dailey had no chance to probe [the magistrate judge's] expertise regarding estimating speeds." (*Id.*; *see also id.* at 5–6 n.2 (arguing, in a footnote, that a "third" ground for reversal is that the magistrate judge "formed and considered against Dailey the Court's opinion regarding speed").)

Based on these alleged deficiencies, Dailey asserts that the evidence was insufficient to prove that he was driving 20 mph or more in excess of the speed limit and that therefore his conviction should be reversed. (*Id.* at 12–13.) Again, the court disagrees.

"Where a defendant challenges the sufficiency of the evidence supporting a conviction, [the reviewing court] view[s] the evidence in the light most favorable to the government and uphold[s] the verdict if substantial evidence supports it." *United States v. Adepoju*, 756 F.3d 250, 254 (4th Cir. 2014). "Substantial evidence is that which 'a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *United States v. Reed*, 780 F.3d 260, 269–70 (4th Cir. 2015) (quoting *United States v. Hassan*, 742 F.3d 139 (4th Cir. 2014)). A defendant mounting a sufficiency-of-evidence challenge "faces a heavy burden," and the reviewing court reverses only where the government's "failure is clear." *Adepoju*, 756 F.3d at 254 (internal quotation marks and citations omitted).

Dailey fails to meet his heavy burden. This court has carefully reviewed Lyon's testimony and the documentary evidence in the case, including the video. Construing all of that evidence in the light most favorable to the government, the court concludes that a reasonable finder of fact could have found beyond a reasonable doubt that Dailey was traveling at speeds at

13

or in excess of 65 miles per hour.

First, as to the video, it was admitted into evidence without objection. As was the case when the United States Supreme Court relied upon video evidence, here "[t]here are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Moreover, even accepting that the motorcycle speedometer might not have been properly calibrated, the speed at which the motorcycle is flying past stationary objects in the video, as well as the speed at which it passes the SUV, all support the fact-finder's determination that Dailey was traveling at least 65 miles per hour. Also, the speedometer indicated that the motorcycle—at its top speed in the video—was traveling 150 miles per hour. As the government notes, "[t]he speedometer would need to be off by 86 miles per hour in order for it not to be exceeding the speed limit by 20 miles per hour." Taking all evidence in a light most favorable to the government, then, the evidence would allow a reasonable fact-finder to find that the defendant was exceeding the posted speed limit by at least 20 miles per hour.

Second, Lyon's testimony, based on his experience and his observations, was that the vehicle was traveling at approximately 100 miles per hour. As the Fourth Circuit recognized in the context of addressing when an officer's visual speed estimate is sufficient to satisfy probable cause,

> where an officer estimates that a vehicle is traveling in significant excess of the legal speed limit, the speed differential—i.e., the percentage difference between the estimated speed and the legal speed limit—may itself provide sufficient "indicia of reliability" to support an officer's probable cause determination.

14
Case 7:15-cr-00060-EKD   Document 16   Filed 07/24/15   Page 14 of 15   Pageid#: 174

*United States v. Sowards*, 690 F.3d 583, 591 (4th Cir. 2012). And as Dailey acknowledges, another judge of this court has held that an officer's visual estimate of speed was sufficient to prove a speeding violation. *Wornom*, 754 F. Supp. 517, 519-20 (W.D. Va. 1991) (excluding radar evidence of speeding due to sufficient lack of calibration evidence but nonetheless affirming conviction for speeding in 35-mph zone where the officer's testified based on his visual observation and estimate that defendant was driving approximately 50 miles per hour.) Although Dailey complains that Lyon's estimate was based on a video and not on an in-person observation, he offers no authority that holds an officer's estimate of speed based on a video is inherently unreliable or less deserving of credibility than an in-person assessment.

The court also finds no merit in Dailey's argument that the magistrate judge improperly introduced evidence or formed "opinions" in an improper manner. While Dailey properly cites to authority that holds that the factfinder is not permitted to conduct experiments or introduce new evidence, that is not what the magistrate judge did here. Instead, he was simply explaining his interpretation of the videotape and the fact that it appeared, based on that videotape, that Dailey was traveling at least 65 miles per hour.

## IV. CONCLUSION

For the foregoing reasons, the court finds no error in the judgment of the magistrate judge. It will therefore affirm Dailey's conviction for reckless driving on or about June 28, 2014.

An appropriate order will follow.

Entered: July 24, 2015

*Elizabeth K. Dillon*
United States District Judge

15
Case 7:15-cr-00060-EKD   Document 16   Filed 07/24/15   Page 15 of 15   Pageid#: 175